**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**APRIL 13, 2015**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.:  10-18799  (NLW) |
| **JOHN A. ROCCO CO., INC.,** | |
| Debtor. | Judge:    Hon. Novalyn L. Winfield |
| **STEVEN P. KARTZMAN, CHAPTER 7 TRUSTEE,** | Adv. No.:  12-01277  (NLW) |
| Plaintiff, | |
| v. | |
| **UTICA NATIONAL INSURANCE COMPANY, INSURASOURCE, INC., WESTERN SURETY COMPANY, THE HARTFORD INSURANCE COMPANY, and PENN NATIONAL INSURANCE COMPANY,** | |
| Defendants. | |

**OPINION**

**APPEARANCES:**


**NORRIS, McLAUGHLIN & MARCUS, PA**
Edward G. Sponzilli, Esq.
Melissa A. Peña, Esq.
Danielle M. DeFilippis, Esq.
721 Route 202-206 North
Somerville, New Jersey 08807
*Special Counsel for Chapter 7 Trustee*

**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**
Christopher S. Finazzo, Esq.
Jeremiah L. O'Leary, Esq.
36 Cattano Avenue
Morristown, New Jersey
*Co-Counsel for Defendant Hartford Insurance Company of the Midwest*

**SHIPMAN & GOODWIN, LLP**
Tara J. Plochocki, Esq.
1133 Connecticut Avenue NW
Washington, DC  20036
*Co-Counsel for Defendant Hartford Insurance Company of the Midwest*

**RIVKIN RADLER LLP**
Brian R. Ade, Esq.
Anita S. Cohen, Esq.
Court Plaza South, First Floor, West Wing
21 Main Street, Suite 158
Hackensack, New Jersey 07601-7021
*Counsel for Defendant Utica Mutual Insurance Company*

**RIVKIN RADLER LLP**
Celeste M. Butera, Esq.
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
926 RXR Plaza
Uniondale, New York 11556-0926
*Counsel for Defendant Utica Mutual Insurance Company*

**RONAN, TUZZIO & GIANNONE, PC**
Gregory W. Boyle, Esq.
One Hovchild Plaza
4000 Route 66, Suite 231
Tinton Falls, New Jersey 07753-7308
*Counsel for Defendant Penn National*

**THE HONORABLE NOVALYN L. WINFIELD, BANKRUPTCY JUDGE**

Before the Court is the motion of Hartford Insurance Company of the Midwest for a determination that certain counts of the instant adversary proceeding are "non-core." Utica Mutual Insurance Company and Penn National Insurance Company join in Hartford's Motion, which the Debtor opposes. The Movants indicate that the core determination is sought so that they may seek to withdraw the reference to the district court pursuant to 28 U.S.C. § 157(d).

## I.        JURISDICTION

Jurisdiction over this contested matter arises pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. The Court has jurisdiction over the threshold issue of whether a claim brought before a bankruptcy court is a core proceeding pursuant to 28 U.S.C. § 157(b) (3). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.       FACTUAL BACKGROUND

On March 25, 2010, John A. Rocco, Inc. ("Debtor") filed a voluntary chapter 11 petition ("Petition"). Prior to filing for bankruptcy, the Debtor operated as a licensed insurance brokerage in the state of New Jersey. (*See* First Am. Compl. for Declaratory J., Breach of Contract, Indemnity, Violation of the Automatic Stay provided for in Section 362 of the Bankruptcy Code and Other Related Relief ("Compl.") at ¶ 12, Aug. 17, 2012, ECF No. 35) The Debtor's business focused on obtaining casualty insurance policies on behalf of

construction, paving, septic, concrete, sanitation, trucking, and hauling businesses, and its bankruptcy was caused by a flood of litigation arising out of its failure to remit premiums to carriers and bind coverage on behalf of its customers.  (*Id.*)  Upon the oral application of a creditor, the Court found cause *sua sponte* for the appointment of a trustee pursuant to 11 U.S.C. § 1104(a)(3) and approved the appointment of Steven P. Kartzman as the chapter 11 trustee ("Trustee") on May 18, 2010. (*Id.* at ¶¶ 14-15)  On February 7, 2012, the Debtor's chapter 11 case was converted to chapter 7 and the Trustee was appointed as the chapter 7 Trustee. (*Id.* at ¶ 16)

On March 23, 2012, the Trustee filed the instant adversary proceeding against Utica Mutual Insurance Company ("Utica"), Hartford Insurance Company of the Midwest ("Hartford"), and Penn National Insurance Company ("Penn National", and, together with Utica and Hartford, the "Defendants" or "Insurers").    The Trustee's Amended Complaint ("Complaint") seeks a declaratory judgment that the Defendants have a duty to defend and indemnify the Debtor against claims covered under pre-petition insurance policies issued to the Debtor between 2006 and 2010.

The claims for which the Trustee seeks coverage fall into three general categories.  The first and most significant category is for liabilities arising out of the Debtor's failure to remit premiums ("Creditor Claims").  (*Id.* at ¶ 20)  Because coverage was never bound, many of the Debtor's customers were left uninsured against casualty claims brought against them by third parties.  Customers and premium financing companies commenced litigation against the Debtor as early as 2007 seeking to recover the return of premium payments and/or damages for losses sustained due to lapses in coverage.[1]  (*Id.* at ¶¶ 21-24)    Additionally, approximately 75

---

[1] Many of the policies procured by the Debtor were funded in part by premium financing companies.  The Debtor and the client would enter an insurance premium financing and security agreement with the premium financing

4

complaints were filed against the Debtor with the New Jersey Department of Banking and Insurance.  (*Id.* at ¶ 25) The Complaint asserts that Utica has an obligation to defend and indemnify the Debtor against these claims pursuant to Errors and Omissions Liability policies ("Utica Policies") issued between 2006 and 2010.[2]  (*Id.* at ¶¶ 51, 56)  Utica assumed the defense of the Debtor in some of the pre-petition lawsuits subject to a reservation of rights.  (*See* Decl. of Danielle M. DeFilippis in Opp'n to Hartford Insurance Company of the Midwest's Mot. for a Determination that Counts One through Three and Six and Seven of the Amended Complaint are Noncore at ¶ 8, ECF No. 49-2)  The 2010 Utica Policy was cancelled due to the Debtor's failure to pay premiums on March 30, 2010, five days after the Petition was filed.  (Compl. at ¶ 60) The Complaint asserts that Hartford is also obligated to defend and indemnify the Debtor against the Creditor Claims pursuant to business liability and employment practices liability policies ("Hartford Policies") in effect between 2006 and 2011,[3] and that Penn National is obligated to provide coverage for the Creditor Claims pursuant to umbrella policies in effect between 2007 and 2010.  (*Id.* at ¶¶ 156-62, 165-67)

The second category of claims for which the Trustee seeks coverage is for losses caused by unauthorized transfers made by former employees of the Debtor.   According to the Complaint, the Debtor's principal, John D. Rocco ("Rocco"), and another employee, Kelly Roetto ("Roetto"), transferred for their own personal benefit nearly $5.5 million in funds belonging to the Debtor during the four year period preceding the bankruptcy filing.[4]  (*Id.* at ¶

---

company, who would remit the entire premium to the Debtor, who was then obligated to remit the premium to the insurer. (Compl. at ¶¶ 20-24)

[2] The Utica Policies were in effect from February 4, 2007 to February 4, 2011.  (Compl. at ¶¶ 51, 56)

[3] According to the Complaint, Hartford issued two "Spectrum Business Insurance" policies during the relevant periods.  The first was in effect from January 30, 2006 to January 30, 2010, while the second was in effect from January 30, 2010 to January 30, 2011.  (Compl. at ¶ 156)

[4] The Complaint alleges that approximately $720,000 was transferred from the Debtor for the benefit of Rocco, and approximately $641,602 was transferred for the benefit of Roetto, in each of the four years leading up to the Petition.  (*Id.* at ¶ 42)

42)  It also alleges that $15,238 was transferred to Rocco and $9,510 was transferred to Roetto

during the post-petition period prior to when the case was converted to chapter 7.[5]  The Trustee

asserts that losses caused by these unauthorized transfers are covered by an "Employee

Dishonesty Coverage Form" included in the Hartford Policies.  (*Id.* at ¶¶ 160)

    The final category of claims consists of the claims of four former employees of the

Debtor for the return of contributions made to their 401(k) employee benefit plans.  (*Id.*)  The

Complaint seeks a determination that these claims, which are for a total of $45,000, are covered

under the "Employee Benefits Liability Coverage" provision of the Hartford Policies.  (*Id.* at

¶¶ 25, 159)

    On December 10, 2012, Hartford filed the instant motion for a determination that Counts

One through Three and Six and Seven of the Complaint are "non-core" proceedings.  Utica and

Penn National joined in Hartford's Motion.  The Defendants argue that the Complaint presents

garden variety state law claims that fall outside of bankruptcy court "core" jurisdiction. The

Defendants do not dispute that Count Four, which seeks damages for an alleged violation of the

automatic stay, is a core proceeding.[6]  The Defendants have indicated that they seek a non-core

determination because they intend to move to withdraw the reference and remove the action to

the district court pursuant to 28 U.S.C. § 157(d).

    The Trustee argues that the Complaint is a core proceeding because it involves post-

petition breach of contract claims.  At a minimum, the Trustee asserts that Counts One through

Three are core because the issue of whether there is coverage under the Utica Policies cannot be

---

[5] The Complaint also asserts that another employee, Angelo Agresti, received $49,000 in improper payroll checks in
each of the four years leading up to the Petition and $3,029 in unauthorized transfers following the Petition.
[6] Count Five sought declaratory judgment that another party, Western Surety Company, was obligated to indemnify
the Debtor on behalf of a Dishonesty Bond.  This claim was resolved by Consent Order entered by the Court on
February 5, 2015.  (*See* Consent Order Approving Settlement with Western Surety Company, Main Case ECF No.
535).

separated from the claim that Utica violated the automatic stay, which the parties agree is a core proceeding.

## III.    ANALYSIS

The scope of this Court's jurisdiction over this adversary proceeding is governed by 28 U.S.C § 157(b), which Congress enacted in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).   In *Marathon*, the Supreme Court held that bankruptcy courts cannot "constitutionally adjudicate an ordinary common law breach of contract claim" based on "a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court."   *Id.* at 84. Thus, 28 U.S.C § 157(b) limits bankruptcy court jurisdiction to "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."   28 U.S.C § 157(b)(1).

While 28 U.S.C § 157(b) does not specifically define "core proceedings," it does provide a non-exhaustive list of proceedings that may be core.   *See* 28 U.S.C. § 157(b)(2)(A)-(O). [7]

---

[7] 28 U.S.C. § 157(b)(2) provides:

> Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the estate;
> (D) orders in respect to obtaining credit;
> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;
> (G) motions to terminate, annul, or modify the automatic stay;
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges;

Moreover, courts have noted that the distinction between core proceedings "arising under" title 11 or "arising in" title 11 is instructive in making the core determination. A core proceeding "arising under" title 11 describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11" while core proceedings "arising in" title 11 refers to proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987). Put more simply, core proceedings may be understood as "actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997); *see also In re Wood*, 825 F.2d at 97 (5th Cir. 1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.").

To determine whether a proceeding is core, courts in the Third Circuit apply the two-part test adopted in *Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir. 1999).[8] First, courts look to

---

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

[8] The test adopted in *Halper* was based on the test adopted by the Fifth Circuit in *In re Wood*, 825 F.2d 90 (5th Cir.1987), which held that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

whether the proceeding is listed among the non-exhaustive list of core proceedings described in

28 U.S.C. § 157(b)(2)(A)-(O).  *Id.*  Next, *Halper* instructs courts to determine whether the claim

"(1) invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature,

could arise only in the context of a bankruptcy case." *Id.* (quoting *In re Guild & Gallery Plus,*

*Inc.,* 72 F.3d 1171, 1178 (3rd Cir. 1996)).  If the claim satisfies both steps of the *Halper* test, it

is "core" and the bankruptcy court has the power to hear the matter and enter final judgments.

*See* 28 U.S.C. § 157(b)(1).  However, if it does not invoke a substantive right provided by title

11 or could arise outside the context of a bankruptcy case, it is "non-core," and, in the absence

of the consent of the parties, the bankruptcy court's authority is limited to submitting proposed

findings of facts and conclusions of law to the district court.  *See* 28 U.S.C. § 157(c)(1); *In re G-*

*I Holdings, Inc*., 278 B.R. 376, 381 ("Assuming *arguendo* that the instant action falls within §

157(b), it must nonetheless satisfy the next step—the core test—as directed by *Halper*.").

Determining whether the instant adversary proceeding is core requires the Court to

analyze each count of the Complaint individually.  *See In re Mullarkey,* 536 F.2d 215, 223 (3rd

Cir. 2008) (noting that the extent of a bankruptcy court's jurisdiction must be evaluated on a

claim-by-claim basis).

## A.    Counts One through Three

Count One seeks declaratory judgment that Utica is obligated to defend and indemnify

the Debtor against Creditor Claims arising out of its failure to remit premiums.  The Trustee

argues that these claims fall under provisions of the insurance contract providing coverage for

the "wrongful acts" of employees, and Count Three seeks indemnity from Utica for any covered

losses.  (Compl. at ¶¶ 52, 98-123, 134)  Count Two asserts that Utica breached its contract with

the Debtor by refusing to provide defense costs and indemnity under the Utica Policies. (*Id.* at

125-26)

Because the issue of coverage under an insurance policy is a question of state law that

routinely arises outside the context of a bankruptcy case, claims for insurance coverage are

typically considered non-core. *See In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th

Cir. 1997) (reasoning that "the claimed right to insurance coverage is a creation of state contract

law and one that could be vindicated in an ordinary breach of contract suit if [the insured] were

not bankrupt."); *Sullivan v. Maryland Cas. Co. (In re Ramex Int'l, Inc.)*, 91 B.R. 313, 315 (E.D.

Pa. 1988) (holding that trustee's action for declaratory judgment under insurance policy issued

pre-petition is non-core); *In re G-I Holdings, Inc*., 278 B.R. 376, 382 (Bankr. D.N.J. 2002)

(noting that an insurance coverage action "bears no resemblance" to other examples of core

proceedings.).

On the face of the Complaint, Counts One through Three do not assert anything other

than ordinary insurance coverage claims. Nonetheless, the Trustee asserts that these counts are

core because they involve post-petition claims for damages that cannot be separated from the

claim for a violation of the automatic stay. According to the Trustee, Counts One through Three

could only arise in the context of bankruptcy because some of the claims for which coverage is

sought were not asserted until after the filing of the Petition and it was not until after the Petition

that Utica breached the contract by cancelling the 2010 policy. (Trustee's Letter Br. in Opp'n to

Hartford's Mot. ("Opp'n"), at 4, ECF No. 49). Additionally, the Trustee argues that the

proceeding is core under section 157(b)(2)(A), which makes any matter "concerning the

administration of the estate" a core proceeding. 11 U.S.C. § 157(b)(2)(A).

There is some support for the Trustee's view that the timing of a claim is relevant to the core determination. *See In re Stone and Webster*, 367 B.R. 523, 526 (Bankr. D. Del. 2007) ("Another factor that is relevant to the determination of whether a proceeding is core or non-core is the time period in which the underlying claim arises."). Courts taking into consideration the timing of a claim note that a post-petition breach of contract claim is more likely to be core than a claim based on a pre-petition breach. *See In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 758 (D.N.J. 1996) ("Courts in this circuit also deem relevant whether the claim arose pre-petition or post-petition and often find that post-petition claims are more appropriately designated as a core proceeding.").[9]  However, other courts in the Third Circuit have held that the timing of a cause of action is irrelevant to the core determination. *See In re G-I Holdings*, 278 B.R. at 382 (noting that the Third Circuit test for core jurisdiction is narrower than the tests applied in other circuits and that considerations such as "whether the action was commenced after the filing of the petition" and "whether the contract is antecedent to the reorganization petition . . . do not play a role under this circuit's core test."). Indeed, a strict application of *Halper* would necessitate a non-core determination because the *Halper* test closely tracks the language of 28 U.S.C § 157(b)(1) and does not mention the timing of the claim as a factor.[10]  If timing is irrelevant, then it is clear that the instant matter is non-core because an insurance coverage dispute does not involve a substantive right provided by the

---

[9] This observation does little to advance the Trustee's position because it is difficult to imagine how a claim arising prior to the petition could be a claim that "could arise only in the context of a bankruptcy case." *Halper*, 164 F.3d at 836; *see also In re G-I Holdings*, 278 B.R. at 382 ("[A]lthough an action filed in state court prior to the petition date may not *automatically* fail this circuit's core test, most such actions will likely fall beyond our core parameters. Under our test's first option, such actions will have been commenced prior to the filing of the bankruptcy case, it is unlikely they will assert a title 11 right. Pre-petition actions will likely fail our test's second option as well, since they not only could have, but actually will have arisen outside of a bankruptcy case.").

Bankruptcy Code and is not "a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Halper*, 164 F.3d at 836.

However, even if the Court accepted the Trustee's position and considered the timing of the claim relevant to the core determination, Counts One through Three are still non-core. First, the Trustee's characterization of the instant proceeding as a post-petition breach of contract dispute is not entirely accurate. Even assuming that the Debtor has a valid breach of contract claim based on an alleged post-petition cancellation of the policy,[11] the remaining claims in Counts One through Three consist of insurance coverage claims arising out pre-petition events and losses. (*See* Compl., at ¶¶54-58) These claims clearly could not "arise only in the context of a bankruptcy case" since litigation involving these claims began as early as 2007. (*Id.* at ¶22) The fact that some of the Creditor Claims were not asserted until after the petition is irrelevant because even these claims arise from the same pre-petition losses that the Debtor and/or Utica were litigating well before the Petition was filed.

Moreover, the Court finds that the cases relied upon by the Trustee are either not persuasive or distinguishable because the rationale for finding post-petition breach of contract actions "core" does not exist under the facts at hand. In *Valley Forge Plaza Associates v. Fireman's Fund Insurance Companies*, 107 B.R. 514 (Bankr. E.D. Pa. 1989), the chapter 11 debtor, although not specifically named as an insured under a pre-petition policy procured by its affiliate, asserted that it was entitled to coverage because the policy included as insureds any "subsidiary, affiliated, associated, owned or controlled companies." *Id.* at 515. The debtor

---

[10] In contrast, other courts, including the Second Circuit, have expressly included the timing of the claim as a relevant consideration under their core tests. *See In re Ben Cooper*, 896 F.2d 1394, 1398 (2nd Cir. 1990).
[11] Utica disputes the characterization of the cancellation as a post-petition claim because it asserts that it sent notice of cancellation prior to the petition and that the policy cancelled on its own terms after the petition when the Debtor failed to make required premium payments. (*See* Utica's Reply to Trustee's Objection to Mot. for a Determination that Counts One through Three and Six and Seven are Non-Core at ¶ 13, ECF No. 52)

alleged that the insurer's post-petition non-renewal of the policy constituted a breach of contract and sought damages as well as a determination that the policy remained in effect during the reorganization. *Id.* Although the court did not find that the timing of the claim was dispositive on the issue, it noted, "there appears to be no constitutional impediment that would prevent a bankruptcy court from deciding a post-petition cause of action based on a state law contract claim." *Id.* at 517. In the context of the chapter 11 reorganization, the court held that the "preservation of an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A)." *Id.* at 518.

While *Valley Forge* provides limited support for the Trustee's position, it is unpersuasive in light of more recent authority applying the two-part analysis adopted in *Halper*. While *Valley Forge* found core jurisdiction pursuant to § 157(b)(2)(A), one of the so-called "catch-all" categories that may provide for core jurisdiction if the claim would impact the administration of the estate, the second step of the *Halper* test imposes the additional requirement that the proceeding must be of a kind that can arise only in bankruptcy. *See In re G-I Holdings, Inc.*, 278 B.R. 376, 381 ("Assuming *arguendo* that the instant action falls within § 157(b), it must nonetheless satisfy the next step—the core test—as directed by *Halper*."). Even though the insurance claim would have impacted the chapter 11 reorganization, it likely would have failed the second prong of the analysis because it does not invoke a substantive right provided by title 11 and is not "a proceeding, that by its nature, could arise only in the context of a bankruptcy case."[12] *Halper*, 164 F.3d at 836. Moreover, since *Valley Forge* was decided, courts addressing

---

[12] Other courts have similarly noted that the fact that a claim may arguably fall under § 157(b)(2)(A) as a "matter concerning the administration of the estate" is not sufficient to satisfy the constitutional limitations imposed by *Marathon*. *See In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir. 1986) ("[S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all

cases involving both pre-petition and post-petition breach of contract claims have held that the mere fact that certain claims did not arise until after the petition was filed does not render the entire proceeding core. *See Beard v. Braunstein*, 914 F.2d 434, 445 (3rd Cir. 1990) (finding that action involving "pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11."). The Court finds this view persuasive because an action involving pre-petition contracts allegedly breached prior to the petition is clearly not the kind of action that "would have no existence outside of the bankruptcy," despite the temporal fact that some of the breach of contract claims were not asserted until after the petition. *In re Wood*, 825 F.2d at 97 (5th Cir. 1987). Such actions are not core because rather than being the kind of proceedings that only arise in bankruptcy, the Bankruptcy Code is "just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re United States Brass Corp.*, 110 F.3d at 1268.

Moreover, *Valley Forge* may be distinguished from the instant case on factual grounds. First, *Valley Forge* dealt with an operating debtor attempting to reorganize under chapter 11 and the court only needed to address the Debtor's claim that the post-petition non-renewal was improper. In that sense, although it was not asserted as such, the Debtor's claim resembled a claim that the policy was property of the estate under section 541. *See* 11 U.S.C. § 541. A claim that an insurance policy is property of the estate is more closely tied to substantive rights under the Bankruptcy Code than a claim that a policy covers certain losses, which is a question that depends entirely on state law. *See In re Longview Power, LLC*, 515 B.R. 107, 114 (Bankr. D. Del. 2014) (noting that "the inquiry about whether the proceeds of the Title Insurance Policy are

provisions, sections § 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional.").

property of the estate under § 541 is actually a separate question from the determination that

coverage under the policy exists," and holding that claim seeking declaratory judgment that

proceeds of insurance policy were property of the estate pursuant to section 541 was core and

that claim seeking declaratory judgment regarding the availability of coverage under the policy

was non-core.).  Even more significantly, while the claim in *Valley Forge* that the cancellation

was improper may have turned on state law, it was neither "independent of" nor "antecedent to"

the reorganization because the parties were not involved in any pre-petition claims involving the

policies and the non-renewal did not occur until after the petition.  *Marathon*, 458 U.S. at 84.

The claim arose in the bankruptcy when the insurer denied that the coverage applied to the

debtor, an entity operating as a going concern and attempting to complete a plan of

reorganization under chapter 11.

In contrast, here the majority of the claims for which the Debtor seeks coverage existed

well before the case was filed and the coverage issue does not merely turn on the relatively

narrow question of whether cancellation was proper.  Rather, it involves more complicated issues

of state law governing the interpretation of the terms, conditions, limitations, and exclusions of

insurance policies.  Moreover, the coverage claims do not affect the administration of the estate

as in *Valley Forge* because the instant matter was converted to chapter 7 over three years ago and

little remains to be administered except for the liquidation of the Debtor's assets.  While the

coverage determination will certainly impact the distribution ultimately received by creditors, it

is well established that a claim's potential ability to bring in assets to the estate is not relevant to

the core determination.  *See Lawrence Group, Inc. v. Hartford,* 285 B.R. 784, 788 (N.D.N.Y.

2002) ("Where insurance proceeds would only augment the assets of the estate for general

distribution, the effect on the administration of the estate is insufficient to render the proceedings

15

core."); *See In re Donington, Karcher, Salmond, Ronan & Rainone,* 194 B.R. at 759 (holding

that a proceeding is not core "merely because the resolution of the action results in more, or less,

assets in the estate."); *In re Stone and Webster*, 367 B.R. at 527 ("The economic effect that a

claim may have on the bankruptcy estate . . .  has no bearing on the core/non-core dichotomy.").

Another case cited by the Trustee, *In re West Electronics, Inc.*, 128 B.R. 900 (Bankr.

D.N.J. 1991), provides even less support for finding the instant claims core.  There, estate

property that was repossessed prior to the bankruptcy was damaged while being returned to the

debtor post-petition.  *Id.* at 902.  The debtor sought a declaration that a pre-petition policy was

in effect at the time of the loss.  Similar to *Valley Forge*, the only issue that needed to be

determined was the relatively narrow issue of whether the policy remained in effect post-

petition, and the bankruptcy court held that the claim was core because both "the events

resulting in the loss and the cause of action for recovery under the insurance policy arose after

the filing of the petition." *Id.* at 903-4.

*West Electronics* is distinguishable because, again, while the question of whether the

policy was in effect may have turned on state contract law, it was neither "independent of" nor

"antecedent to" the reorganization since both the loss under the policy and the claim for

coverage occurred after the petition was filed.  Moreover, the bankruptcy court's holding in

*West Electronics* was in fact rejected by the district court on appeal.  *See West Electronics, Inc.*

*v. National Union Fire Insurance Co. (In re West Electronics, Inc.),* 1992 WL 184340 (D.N.J.

Jan. 9, 1992).  The district court held that while the bankruptcy court "was correct to distinguish

between pre- and post-petition contracts, and between pre and post-petition breaches," the

matter was not a core proceeding because the insurer "contemplated neither dealing with a

bankruptcy estate nor consenting to the jurisdiction of the bankruptcy court," at the time it

entered into the insurance contract.  *Id.* (quoting *In re Nat'l Enterprises, Inc.,* 128 B.R. 956 (E.D. Va. 1991)).  Here, there is no allegation that the Defendants ever contemplated dealing with the bankruptcy estate or consenting to bankruptcy court jurisdiction.

The Trustee's reliance on *In re Epi-Scan*, *Inc*., 71 B.R. 975 (Bankr. D.N.J. 1987) is also misplaced.  *In re Epi-Scan* addressed whether the debtors' actions to recover pre-petition and post-petition accounts receivables were both core.  Judge Tuohey held that the claims to recover the pre-petition accounts were non-core because the debtor owned the right to payment on the accounts prior to the bankruptcy but that "an action to recover on a postpetition account . . . is core for the reasons that such a cause of action clearly 'arises in' in the title 11 case and was not owned by the debtor at the time the title 11 case was commenced."  *Id.* at 979.  Applying similar reasoning, other courts have held that the core determination depends on when the loss occurred and whether the debtor owned the claim to payment at the time of the bankruptcy filing.  *See In re Stone and Webster*, 367 B.R. at 527 (discussing *West Electronics* and noting that "[h]ad the damage to the property occurred pre-petition, it would have been a plain state law claim by the debtor, remote from the substantive rights granted under the Bankruptcy Code."); *Beard v. Braunstein*, 914 F.2d at 443 ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core.").[13]

Applying this analysis to the instant matter, it is clear that, even under the expansive view of a core proceeding advocated by the Trustee, Counts One through Three are non-core claims.  The Debtor's claims for coverage are analogous to claims for pre-petition account receivables because these rights, if they exist at all, were owned by the Debtor as of the date of

---

[13] Here, the Complaint does not identify the extent to which damages were incurred pre- or post-petition.  However, the Debtor's claim that it has suffered damages as a result of Utica's post-petition cancellation of the policy is dubious given that the automatic stay has been in place since 2010 and has prevented any litigation from proceeding against the Debtor.

the losses, regardless of when contract was breached or when certain claimants brought their claims against the Debtor.   The fact that the alleged breach of contract occurred a few days after the Petition does not render the claims for pre-petition losses core.  *See In re Nat'l Enterprises*, *Inc.*, 128 B.R. 956, 961 (E.D. Va. 1991) ("The fortuitous occurrence of an alleged breach of contract post-petition—standing alone—should not render the estate's action to collect damages for that breach a core proceeding."); *Beard v. Braunstein*, 914 F.2d 434, 444 (3rd Cir. 1990) (finding that action involving "pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11."); *In re Stone & Webster, Inc.*, 367 B.R. at 523 (Bankr. Del. 2007) (finding insurance coverage dispute non-core because the coverage claims were asserted and litigated pre-petition).

Finally, the Trustee argues that the Court should find that Counts One through Three are core because they are factually intertwined with Count Four, which asserts a violation of the automatic stay and which all of the parties agree is core.   Count Four alleges that the post-petition cancellation of the 2010 Utica Policy violated the section 362(a) injunction against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a).   Utica contends that the stay was not violated because it mailed notice of cancellation of the policy to the Debtor pre-petition and that the policy cancelled on its own terms post-petition due to the Debtor's failure to make premium payments. (Utica's Reply to Trustee's Objection to Mot. for a Determination that Counts One through Three and Six and Seven are Non-Core at ¶ 13, ECF No. 52)   Although the Trustee asserts that the Court cannot address Counts One through Three without also addressing whether the post-petition cancellation of the policy constitutes a violation of the automatic stay, the Court is not persuaded.   Whether Utica's conduct constituted an unlawful attempt to obtain

possession of property of the estate is a wholly separate question from whether the Creditor Claims are covered under the policies, and the Trustee gives no reason why a court of competent jurisdiction could not decide the coverage issues either before or after this Court addresses whether Utica's conduct violated the automatic stay. *See also In re Exide Technologies,* 544 F.3d 196, 206 (3d Cir. 2008) ("[t]he mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'"). Accordingly, the Trustee's argument is unavailing.

The bottom line is that Counts One through Three present the kind of claims that the Supreme Court held bankruptcy courts could not adjudicate to final judgments in *Marathon*. *See Marathon*, 458 U.S. at 84. The question of coverage under the policies is entirely one of state law, and whatever rights the Debtor may have to coverage under the policies arose independent of and antecedent to the bankruptcy. Even taking into consideration the timing of the claims (which the Court does not have to do under *Halper*), the claims for coverage under the Utica Policies existed when the losses occurred and the substantive rights provided under the Bankruptcy Code have no effect on these claims. Thus, Counts One through Three are non-core.

## B.    Counts Six and Seven

Count Six seeks declaratory judgment that Hartford is obligated to defend and indemnify the Debtor for losses under business liability and employment practices liability policies in effect between 2006 and 2011. (Compl. at ¶ 158-62) It asserts that the Debtor's failure to remit premiums is covered under a "Business Liability Coverage Form," that the unauthorized transfers are covered under an "Employee Dishonesty Coverage Form," and that the employee 401(k) benefit claims are covered under the Employee Benefits Liability Coverage. (*Id.* at

¶ 158-60)  Count Seven seeks declaratory judgment that Penn National is obligated to provide coverage for Creditor Claims under umbrella insurance policies effective between February 2007 and February 2010.

For the same reasons Counts One through Three are non-core, Counts Six and Seven are also non-core.  The same analysis that applies to the Utica Polies applies to the coverage of the Creditor Claims under the Hartford and Penn National policies.  Similarly, the unauthorized transfer claims are based almost entirely on pre-petition conduct and pre-petition losses.  Although the fraudulent conduct may have continued, to a limited extent, after the Petition, the Debtor owned the right to coverage for these losses (if it owns that right at all) at the time of the bankruptcy.  While the employee benefits coverage claims were not asserted until after the Petition, the obligation to return the contributions, and thus any right to coverage for these obligations, accrued entirely prior to the Petition.  These claims are not core to the instant matter because they arose independent of and antecedent to the Petition and could have been asserted outside of bankruptcy.  Accordingly, Counts Six and Seven are non-core claims.

## IV.  CONCLUSION

For the above reasons, the Defendants' Motion for a determination that Counts One

through Three and Counts Six and Seven of the instant adversary Complaint are "non-core" is

granted.

An order in conformance with this Opinion will be entered by the Court.


*s/  Novalyn L. Winfield*

_____
NOVALYN L. WINFIELD
UNITED STATES BANKRUPTCY JUDGE


Dated: April 13, 2015